UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 15-10256-RGS

UNITED STATES OF AMERICA

v.

JESSIKA HEYER

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO SUPPRESS

December 27, 2018

STEARNS, D.J.

Jessika Heyer is before the court as collateral damage of the drug dealing done by her son Roberto Jiminez-Heyer (Jiminez) from her home at 102 Washington Avenue in Chelsea, Massachusetts. Specifically, Heyer is charged with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(2). At issue are two rounds of handgun ammunition seized by federal law enforcement officers from a nightstand in her bedroom pursuant to a search warrant executed on July 22, 2015. Heyer challenges the warrant on three grounds: (1) an alleged lack of probable cause to search her entire home for evidence of drug dealing; (2) an alleged lack of particularity as to the areas of the home to be searched, including her bedroom; and (3) the failure of the executing officers to observe the aptly named "knock and

announce" rule. She also objects to any application of the so-called "good faith exception" to the exclusionary rule.

A search warrant may issue on a showing of probable cause — something more than a suspicion, but something significantly less than proof beyond a reasonable doubt. *See Safford v. Unified Sch. Dist. of Redding*, 557 U.S. 364, 371 (2009) (noting that probable cause is a fluid concept taking its substantive content from the particular circumstances – "the best that can be said generally about the required knowledge component of probable cause . . . is that it raise a 'fair probability,' . . . or a 'substantial chance,' . . . of discovering evidence of criminal activity") (citations omitted). The standards defining probable cause are "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). In evaluating probable cause, "we have consistently looked to the totality of the circumstances . . . reject[ing] rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (citations omitted).

Whether a challenged warrant is issued on a sufficient showing of probable cause is a question of law to be determined by the reviewing court. *Beck v. Ohio*, 379 U.S. 89, 96 (1964). In reviewing probable cause for the issuance of a warrant, the inquiry begins and ends with the "four corners of

the affidavit." *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999). "[W]hile underlying circumstances must be recited, affidavits should be construed in a commonsense manner and . . . doubtful cases should be resolved in favor of the warrant." *Rosencranz v. United States*, 356 F.2d 310, 316 (1st Cir. 1966). Where, as here, a search is conducted pursuant to a warrant, the burden falls to the defendant to show the absence of probable cause by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

The contested warrant was issued by Magistrate Judge Kelley on July 20, 2015, on the application of Elliot Rizzo, a Special Agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF). In his affidavit, Agent Rizzo set out the following salient facts. Since early June of 2015, Rizzo and other law enforcement officers had focused on suspected drug dealing by Jiminez. Their principal source of information was a confidential witness identified as CW-1, a person known personally to Agent Rizzo as a paid ATF informant with a record of providing truthful and reliable information. CW-1 identified Jiminez as a member or an associate of the East Side Money Gang, a violent Chelsea street gang implicated in several shootings of rival gang members. Jiminez, who was 18 years of age at the time, was independently known by the officers to have several delinquency findings based on crimes of violence,

including assault and battery with a dangerous weapon and attempted armed robbery. CW-1 disclosed that Jiminez lived with family members in a single-family home at 102 Washington Avenue in Chelsea, a fact confirmed by the officers through Registry of Motor Vehicles and Criminal History Board records.

As related in the affidavit, in late June of 2015, acting under the agents' direction, CW-1 made a controlled purchase of crack cocaine from Jiminez in a meeting in front of 102 Washington Avenue. In mid-July, CW-1 made a second c0ntrolled purchase of crack cocaine from Jiminez after he emerged from the residence. This transaction was secretly taped by audio and video recorders. Agent Rizzo concluded his affidavit with the observation that in his training and experience, drug dealers commonly keep records and other memorabilia of their illicit business in the homes they use as stash houses, usually together with drugs and packaging paraphernalia and firearms "to protect both themselves and their drugs from thefts and/or robberies." Rizzo Aff. ¶ 10.g. Agent Rizzo sought, and received, authority to search what was described as a three-story, single family home at 102 Washington Avenue, including all rooms, and containers where drugs and firearms might be stored or concealed, such as "safes, vaults, file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, and trash cans

located on or near the premises, that are owned or under the control of the occupants of such premises." Warrant, Attach. A. The items at issue, two rounds of .380 caliber ammunition, were seized from the drawer of a nightstand in Jessika Heyer's basement bedroom. A .38 caliber revolver,[1] additional rounds of ammunition, a quantity of drugs, and drug paraphernalia were seized from the bedroom occupied by Jiminez.

A.  The Search of the Residence

It has long been the rule that a warrant for a single-family home permits the search of the entire dwelling regardless of who has claim to any specific room or common area so long as the evidence or contraband detailed in the warrant might reasonably be found there. *United States v. McLellan*, 792 F.3d 200, 212 (1st Cir. 2015). Heyer argues that because the only person accused of drug dealing in Agent Rizzo's affidavit was Jiminez, the warrant should have been limited to a search of his bedroom and the common areas of the house to which he had free access. Heyer, while conceding that "cases generally uphold searches of a single-family residence occupied by several people," Def.'s Mem. at 9, contends that had the affidavit been more specific in detailing the presence of others in the house, including two guests and a

---

[1] Although the diameters are roughly the same, the .380 bullet is designed for a semi-automatic pistol and cannot be properly loaded in a .38 caliber revolver.

small child, the Magistrate Judge would have required the higher showing of particularity as to the unit to be searched that is applied in cases involving multi-unit dwellings. *See, e. g., United States v. Mousli*, 511 F.3d 7, 12 (1st Cir. 2007) ("[T]he particularity requirement obligates the police to 'specify the precise unit that is the subject of the search,' and 'the general rule is that a warrant that authorizes the search of an undisclosed multi-unit dwelling is invalid.'") (citation omitted). The problem with the argument is two-fold. In the first instance, 102 Washington Avenue was not a multi-unit dwelling; it was exactly as Agent Rizzo described it – a single-family dwelling where other members of Heyer's family and her invitees also lived or stayed. Second, Heyer has offered no evidence that the rooms in her residence had been dedicated to the exclusive use of individual inhabitants (including Jiminez), or that the officers had any reason to suspect that such might have been the case. In an early case involving a warrant directed to a residential building that, unbeknownst to officers, had been subdivided into separate units, the Supreme Court made the common-sense observation that "we must judge the constitutionality of [the officers'] conduct in light of the information available to them at the time they acted." *Maryland v. Garrison*, 480 U.S. 79, 85 (1987); *see id.* at 88 (finding that the officers could not reasonably have known that a third-floor apartment had been

subdivided); *United States v. Dorsey*, 591 F.2d 922, 931 (D.C. Cir. 1978) (same); *Commonwealth v. Luna*, 410 Mass. 131, 137 (1991) (holding that defendants failed to meet their burden of showing that police should have known that two separate apartments had been created in what outwardly appeared to be a single-family home); W. R. LaFave, 2 Search and Seizure § 4.5(b) (2012) (limning the "multiple-unit exception").

B. The Seizure of the Ammunition

Heyer next argues that the warrant was overbroad in authorizing a search of her home for firearms and ammunition. It is true that the affidavit, while reciting delinquency findings that might well have involved the use of a firearm by Jiminez (assault and battery with a dangerous weapon and attempted armed robbery), made no specific link between Jiminez's drug dealing and firearms. Rather, Agent Rizzo offered a generalized opinion that weapons are often found in the possession of persons who deal in drugs. Again, there are two problems with Heyer's argument. The first is that the "love and marriage" association of drugs and guns is one confirmed by hard experience and well accepted by the courts. *See United States v. Green*, 887 F.2d 25, 27 (1st Cir. 1989) (recognizing that firearms are "tools of the trade" for drug traffickers); *United States v. Walters*, 904 F.2d 765, 769 (1st Cir. 1990) (same); *United States v. Sarda-Villa*, 760 F.2d 1232, 1234 n.1 (11th

Cir. 1985) (same); *United States v. Payne*, 805 F.2d 1062, 1065 (D.C. Cir. 1986) (same).

The second stumbling block for Heyer is the "plain view" doctrine. It is well established that police executing a valid search warrant may seize evidence encountered in plain view. *United States v. Aguirre*, 839 F.2d 854, 858-859 (1st Cir. 1988); *United States v. Robles*, 45 F.3d 1, 6 (1st Cir. 1995); *United States v. Clayton*, 210 F.3d 841, 845 (8th Cir. 2000); *United States v. Van Damme*, 48 F.3d 461, 466-467 (9th Cir. 1995). Here, the warrant at issue specified the seizure of firearms and ammunition. Even assuming, arguendo, that Agent Rizzo's affidavit failed to establish probable cause to believe that such would be found on Heyer's premises, items named in invalid portions of a warrant that are in plain view may be seized if the scope and intensity of the search leading to their discovery is consistent with the valid portions of the warrant. *United States v. Fitzgerald*, 724 F.2d 633, 637 (8th Cir. 1983); *United States v. Soussi*, 29 F.3d 565, 572 (10th Cir. 1994).

It is true that the lawful view of an exposed item does not by itself justify a "plain view" seizure.

> It is important to distinguish "plain view," as used . . . to justify *seizure* of an object, from an officer's mere observation of an item left in plain view. Whereas the latter generally involves no Fourth Amendment search . . . , the former generally does implicate the Amendment's limitations upon seizures of personal property.

8

*Texas v. Brown*, 460 U.S. 730, 738 n.4 (1983) (plurality opinion) (citations omitted). For a plain view seizure to be valid, two mutually dependent prerequisites must be met: (1) a prior valid intrusion by officers into a constitutionally protected area; and (2) an "immediate" recognition of the item's evidentiary significance (that is, probable cause for its seizure). *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971) (plurality opinion); *cf. Horton v. California*, 496 U.S. 128, 140 (1990) (holding that the *Coolidge* third prerequisite of "inadvertence" is no longer federal law).

Here, there is no doubt that the two prerequisites for a plain view seizure were satisfied. The officers were on the premises at 102 Washington Avenue under the authority of a valid search warrant that gave permission to search any containers, including closed drawers, in which drugs and weapons might reasonably be stored or concealed. The evidentiary significance of the rounds of ammunition would also be recognized by any reasonable officer searching the premises of a suspected drug dealer. Although the plain view doctrine is not an invitation to probe or rummage through items not readily recognized as incriminating, *Coolidge*, 403 U.S. at 466, here the most that occurred was a passive inspection of the ammunition before it was seized as evidence, which is perfectly permissible conduct under the Fourth Amendment. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987) ("It

would be absurd to say that an object could lawfully be seized and taken from the premises, but could not be moved for closer examination.").[2]

C. The No-Knock Violation

There are two facets to this argument. First, Heyer states, and the government does not appear to dispute, that the officers did not "knock and announce" their presence before entering her home. Second, she objects to the way in which the search was conducted, namely by an excessive number of officers (thirteen) entering at an early morning hour (4:45 a.m.) using excessive force to gain entry (a flash bang device and smoke grenade).[3] Assuming that the officers gave insufficient notice of their presence before beginning the execution of the warrant, that fact is of no exclusionary significance.

---

[2] "[T]he use of the phrase 'immediately apparent' [in *Coolidge*] was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Brown*, 460 U.S. at 741. The doctrine requires much less than perfect knowledge – it requires only that an officer have probable cause *before* seizing an incriminating item. *Minnesota v. Dickerson*, 508 U.S. 366, 376 (1993).

[3] She also claims that she was selectively targeted for a "militarized" entry because she is Hispanic and, as such, is "more likely to be [a victim] of police excessive force." Def.'s Mem. at 16. She offers no evidence to substantiate this serious accusation and, as she points out earlier in her Memorandum, *id*. at 5-6, she was never a target of the warrant or the search.

It is undisputed that the common-law knock-and-announce rule is a prerequisite to forcible entry of a dwelling by police (subject to exigent circumstances and statutory exceptions that do not apply here). "Given the long-standing common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." *Wilson v. Arkansas,* 514 U.S. 927, 934 (1995).

> [T]he individual interests implicated by an unannounced, forcible entry should not be unduly minimized. . . . [T]he common law recognized that individuals should be provided the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry. . . . Additionally, when police enter a residence without announcing their presence, the residents are not given any opportunity to prepare themselves for such an entry. . . . The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed.

*Richards v. Wisconsin*, 520 U.S. 385, 393 n.5 (1997). The rule also serves to protect "human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident." *Hudson v. Michigan*, 547 U.S. 586, 594 (2006). "What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant." *Id.* Because the social costs of applying the exclusionary rule to knock-and-announce

violations so far outweigh any appreciable benefit in deterring warrantless entries, and because adequate civil remedies are available to redress any real harms, "[r]esort to the massive remedy of suppressing evidence of guilt is unjustified." *Id.* at 599; *see id.* at 605 (Breyer, J., dissenting) ("Today's opinion . . . weakens, perhaps destroys, much of the practical value of the Constitution's knock-and-announce protection"); *see also United States v. Acosta*, 502 F.3d 54, 60 (2d Cir. 2007) (noting that the constitutional reasoning of *Hudson* applies to violations of the statutory knock-and-announce rule as well); *United States v. Garcia-Hernandez*, 659 F.3d 108, 112-113 (1st Cir. 2011) (same – the officers' aggressive, "Rambo-like" method of entry notwithstanding).

Finally, the manner of execution of the warrant, whether unduly forcible or not, has no bearing either on any exclusionary remedy. "[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant – subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'" *Dalia v. United States*, 441 U.S. 238, 257 (1979); *see Commonwealth v. Garner*, 423 Mass. 735, 745 (1996) (rejecting any rule that would require prior judicial authorization of the use of diversionary "flash-bang" devices because "[t]his would embark

our judiciary on an enterprise for which we are ill equipped by training or experience"). That police damage or destroy property to effect a no-knock entry also has no bearing on the analysis. *United States v. Ramirez*, 523 U.S. 65, 71 (1998); *cf. United States v. Banks*, 540 U.S. 31, 40 (2003) ("[T]he exigent need of law enforcement trumps a resident's interest in avoiding all property damage . . . .").

> This is not to say that the Fourth Amendment speaks not at all to the manner of executing a search warrant. The general touchstone of reasonableness . . . governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.

*United States v. Ramirez*, 523 U.S. at 71 (citation omitted). Thus, a claim for compensation for property unnecessarily damaged or destroyed during the execution of a search may be brought under 42 U.S.C. § 1983 on a Fourth Amendment theory of common-law trespass. *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2001); *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999); *United States v. Jones*, 214 F.3d 836, 838 (7th Cir. 2000). But that, and not exclusion, is Heyer's only potential remedy.[4]

---

[4] Because I find the warrant and its execution to be constitutionally valid in all respects, I see no need to discuss the government's alternative argument that the "good faith" exception" established by *United States v. Leon*, 468 U.S. 897 (1984), should be applied.

13

ORDER

For the foregoing reasons, Heyer's motion to suppress is <u>DENIED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns          </u>
UNITED STATES DISTRICT JUDGE